The Honorable Court will now rise. The Honorable United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may draw near, give their attendance, and they shall be heard. God save the United States of America and this Honorable Court. Good morning. Please be seated. The Court is in session. Today's cases will be called as previously announced, and the times will be as allotted to counsel. The first case today is No. 22-1660, United States v. Esmeraldo-Burgos-Balbuena. At this time, would counsel for the appellant please introduce herself on the record to begin. Good morning. May it please the Court.  On behalf of Mr. Esmeraldo-Burgos-Balbuena, may I please reserve two minutes for rebuttal? You may. Your Honors, breach can occur by an affirmative action or by an omission. In Mr. Burgos' case, it's not about what was said, but what the government did not say. The government induced Mr. Burgos to waive a multitude of constitutional rights for a promise to make a viable recommendation for a year-and-a-half sentence for an illegal reentry offense. However, Mr. Burgos received a 37-month sentence, over 200% amount of incarceration time than what he bargained for in the plea, and a substantially higher sentence than his companion, Mr. Guzman, received only six weeks earlier when he was sentenced by Judge Besosa. We have clear holdings in this circuit that the government cannot pay lip service to the plea. These principles are established and clear. Prosecutors are held to meticulous standards of promise and performance. Technical compliance is not enough, and the defendant is entitled to the benefit of the bargain. So in a unique case where the plea agreement constituted a joint recommendation to a downward variance of over a year, irrespective of criminal history category, the government failed to rise to these standards of promise and performance by not placing the district court in a position to understand or consider why it should vary downward. In this downward variance plea agreement case, two omissions stand out. First, the failure by the prosecutor to mention the disparity between Mr. Burgos' sentence and what happened to his companion, Mr. Guzman, a few weeks prior. And secondly, by paying lip service to the constitutional waivers that Mr. Burgos waived, particularly during the back end of the Delta variant COVID-19 pandemic. How do we know that those two defendants are comparable? If it is, as you say, the government's burden to establish that, how do we know? We know they were in the same boat, but we don't really know anything else. And isn't that your obligation to establish below? Well, Your Honors, that is something that the defense counsel could have argued. Unfortunately, in this case, defense counsel was not allowed to be present at the sentencing hearing because the district court denied her motion to continue when she was sick with COVID. So whether defense counsel would have been able to argue the disparity between Mr. Guzman and Mr. Burgos, we do not know if that was something she would have offered before the court. The prosecutor in this case was the only person in the courtroom that day with all the information. We know they're similar because the criminal complaints allege almost identical immigration and criminal history. There's no appeal of the denial of the continuance? No, Your Honor, there's no appeal of the denial of the continuance. The district court ordered another attorney from the public defender's office to appear and an attorney from the public defender's office. So there was a defense counsel in the room? Yes, there was a defense counsel. And that defense counsel didn't make the argument? That defense counsel did not make the argument. And it's important to note that these were prosecuted via separate informations, not as co-defendants. So this isn't something that defense counsel, especially a last minute defense counsel, would be getting docket notifications or becoming aware of what happened to Mr. Guzman. Again, the prosecutor, the one who should desire uniformity and that the principles be upheld, was the one who knew what happened to Mr. Guzman. In fact, it was the same prosecutor at the change of plea hearings and at both sentences. The prosecutor was the only one in the room that day that had access to both pre-sentence reports, the PSR. The prosecutor signed both identical plea agreements with the same enhancements, and the prosecutor would have known and defense counsel would have had no way of knowing, because we don't have access to the other person's PSR, that Mr. Guzman did not get a two-point enhancement for reckless endangerment as Mr. Burgos did. So while, yes. I just, how is that the prosecutor's obligation to raise before the district court, especially in terms of the enhancement, right? The enhancement appeared in the PSR report, I think, and then there's no objection by defense counsel. Is that right? Yes, that's correct. We are not necessarily arguing that the government is always obliged to object to a PSR. It wasn't in the language of a plea agreement contract between the government and Mr. Burgos in this case. We can't tell the government how to get there, the downward bearings, but we need them to get there. No, you just need them to follow their obligation to recommend the sentence and argue on behalf of it. How is this point related to what was promised? Your Honor, while it's true that the prosecutors stood and recommended 18 months and mentioned a few lines about the waivers of Mr. Burgos' rights, that was the basis for the recommendation from the government, correct? Correct. So I don't fully understand what the argument is. The government said, we're going to recommend this lower sentence because of your cooperation. The government then tells the judge, we are recommending the lower sentence because of the cooperation. Where is the breach? Your Honor, an impartial observer listening in the courtroom that day would not have believed that the prosecutor truly felt that a downward variance was what they were recommending in this case. We already have a district court that's up against an almost double PSR guideline recommendation and variance language written by the probation officer against Mr. Burgos. One way to think about it, that's the risk of entering into the agreement for your client. Because if the recommendation is so at odds with what the guidelines calculation, the enhancements, et cetera, will show, and with the range, then there's a risk that the judge won't go with the recommendation. So that can lead to, you could bargain about other things that have to be said, but in fact, the bargain, as struck, was the government will recommend X sentence for these reasons. And as far as I can tell from the transcript, the government said, we're recommending X sentence for these reasons. And you've heard what the defense counsel said before on behalf of why those are strong reasons, and I won't repeat it now. So I'm just still not quite sure what's missing, how we would have an operational rule where we could conclude that there was a breach. Just to follow up on Judge Barron's question, you know, this phrase, the prosecution has to do more than pay lip service to the agreement. What is that more? I mean, we hear that phrase invoked over and over again. What would be more than lip service in this case, particularly because, as Judge Barron pointed out, the prosecution heard all of the reasons that the defense was arguing in support of this agreement, and the prosecution referred to that for these reasons, as mentioned by defense counsel. This is why we agreed to that. What more could be expected? Okay, I think I'm going to answer two-fold. Sure. Two questions. So I am not in a position to say what the prosecutor should say in each sentence. What was said here was 18 months and almost a copy and paste of language in the plea agreement. In a case, this is a unique case, perhaps if we were in a guideline scenario where the government signed a guideline sentence with the defense, that might be a different story. But we are in a case with a joint recommendation to a downward variance, a large, let me finish my point, a large downward variance. And in cases such as these, irrespective of criminal history category, so a prosecutor going into a sentence such as this, knowing that we are in such a large guideline versus plea agreement place, to merely repeat an 18-month recommendation and the language that was in the plea about the waivers is technical compliance. We can think of a lot of examples of what the prosecutor needed to say. Mr. Guzman's example, perhaps mentioning the extreme benefit of these waivers during COVID. It's not just a prosecutor always gets the benefit of having a trial waived, but there are more waivers in this case. And in order, it's important for the prosecutor because of the prestige that the government has before the district court, as noted by this court in Vélez-Carrero, the prosecutor needs to step up in a downward variance case, a joint recommendation for downward variance, and say more than merely 18 months because he waived these rights, and capitulating to what defense counsel said. I am going to respectfully push back a little bit that the prosecutor adopted the mitigation arguments, that was the second part of the question. I think a clear reading of the transcript, this is at appendix page 81, the prosecutor says, we agree, we stand by the plea agreement at paragraph 8, period, for the reasons brother counsel mentioned, which I'm not going to repeat. I think a literal meaning of that says the prosecutor is accepting the arguments that brother counsel made as to the plea agreement, which was part of his mitigation arguments. I don't think necessarily we can read that into saying that the prosecutor is adopting the mitigation arguments. Counsel, I get a sense that a principle that you're arguing for is that when there is such a variance between the pre-sentence report and the agreed upon recommendation, the relevant guideline, whether there should be a two-point enhancement, that that's a signal to the prosecution that they're going to have a burden of justification that might not otherwise be there if the pre-sentence report was consistent with the recommendation. Is that at least in part what you're arguing, that given the discrepancy between the pre-sentence report and the recommendation, that should have been a signal to the prosecution that something more than just saying we stand by the agreement was necessary? Yes, Your Honor. While we're not asking the circuit to establish a bright line rule, because I think the principles of breach are longstanding over decades in the circuit, there is a difference between a survey of the cases in the circuit for breach, almost every single one is for a range. So I think there's a difference when we're arguing between a range or a guideline sentence and like what Your Honor said about when we're in a downward variance world. Yes, the prosecutor said 18 months one time and repeated the lines in the plea. But again, that takes me back to the impartial observer test. Would a person listening to this advocacy believe that the prosecutor truly believed that her plea agreement was what the government really wanted for Mr. Bordegos? Or by just repeating those lines, is it saying, but the guidelines are okay as well? Just before you sit down, in the cases where we've used this lip service or technical compliance not being enough, are those cases in which there was a breach? Yes. If I'm not mistaken, the lip service, I'd have to review the brief to be exactly certain, but the lip service I believe initially comes from Canada. That's what my impression is, and I guess that's why I'm having a little trouble with whether we really meant what we said about lip service. Because it's one thing if we say, well, there's a breach, so you can't just pay lip service. But it's kind of a confusion because if there is a breach, it's not lip service, it's just a breach. Lip service is when there's no breach. So I'm actually trying to figure out whether we've ever had a case with no breach in which we've said, nonetheless, it was a breach because it was just lip service, which I understand that's what you're, that is what I think you're asking for. In other words, there's no technical breach. You're not saying there is. You're just saying implicitly you needed to say more than you did. And I guess, do we have a case like that? It's okay if we don't, but I don't think we do. Your Honor, to my knowledge, based on the cases that we've surveyed, there's not an exact case where there's a downward variance and by merely repeating, as Your Honor said, 18 months. And I think that's important to note that this is a unique case. The survey of all these cases is a range in which the government was, and that's putting this circuit in a different position. Thank you. Thank you, Your Honor. I'll save my question for opposing counsel. Thank you. Thank you. Thank you, counsel, at this time. Counsel for the United States, if you would please introduce yourself on the record to begin. May it please the Court. Maria Luchtero for the government. The Court should defer Mr. Burgess' sentence because, first, the prosecutor fulfilled her obligations under the plea agreement, so there was no breach. And, second, even assuming no waiver, the district court here issued a reasonable, but in-kind sentence for Mr. Burgess, who already had six prior illegal reentries and three immigration-related convictions. Counsel, can I just, this is the question I was going to pose. Again, this phrase lip service, I'll tell you what I think it means. You know, we've said that these plea agreements incorporate basic contract principles. It's black-letter law that all contracts incorporate an obligation of good faith. I think lip service is a shorthand for the prosecution is not proceeding in good faith in the way that they are advocating for the recommended sentence. They're just going through the motions in a perfunctory way that really signals to the judge, yeah, we agreed to this, but we're not really all that enthusiastic about it. You can certainly take a different view. Do you accept that principle that lip service really is a way of saying the government's got to proceed in good faith in advocating for the agreement? That may be, Your Honor. I don't know exactly how lip service is interpreted by this court's case law per se. It's not clear. However, I would point this court's cases in Lessard and United States v. Brown that had substantially similar facts to this case. For example, in Lessard, this court found no breach where the defendant had argued that the government had breached a plea agreement because it did not advocate for the sentence or did not explain the reasons for the sentence. And this court said, no, there was no breach because there was no such obligation on the plea agreement. And in United States v. Brown, which was in 2022, this court addressed an argument by a defendant who had not had the two-level enhancement included in the plea agreement, but then the pre-sentence report included it. And the defendant argued and appealed that there was a breach because of inaction, because the government did not oppose the two-level enhancement in the pre-sentence report or discourage the district court judge from applying the enhancement. And this court stated, no, there was no breach because there was no such obligation under the terms of the plea agreement to do so. Suppose the judge here, I mean the prosecutor here had said, the government recommends a sentence of X months, period. Would that have been a breach? The government's position is that it would not have been a breach because the case law does not call for a duty of advocacy when there was no such duty included in the plea agreement. So just a bare recommendation is enough. In other words, once the plea agreement says, here's what the agreement is, as long as the government stands up and says, just say we stand behind the plea recommendation, period, that would be enough. When the government recommends unequivocally that sentence that the parties had agreed on in the plea agreement, there was no other obligation in the plea agreement. What does that add? I mean, it's a given. The judge understands there was an agreement. It's hardly news if the prosecution stands up and says, we have agreed to this. The judge knows that going in. What value is the prosecution supposed to add to the process of trying to convince the judge to accept this agreement? Doesn't the prosecution have some burden to persuade the judge to abide by the agreement that it's entered into? Otherwise, the prosecution can play games. It can enter into it sort of knowing that the judge will probably take a dim view of it and let the judge do what the judge wants. It just seems so formulaic to say all we have to do is say, yeah, we've agreed to this. Nothing more is required. In these circumstances, in this case, the parties had agreed to the 18-month sentence and the government recommended that 18-month sentence unequivocally based on what the parties had agreed on. And a disclosed law supports that that was sufficient. If I'm understanding the idea when you say there's no duty of advocacy under the opinions, the benefit of the bargain is the recommendation. And that recommendation, all it has to do is be communicated. So now you know the government agrees to this, then the judge can do what he wants with it. If you wanted a duty of advocacy or something like that, that's got to be separately bargained for. That's the idea. That is correct, Your Honor. And again, I will point you that here the review is for plain error. And the good faith, I guess, is if you've done anything that undermined the recommendation, that might be a breach. But simply not forcefully advocating for it isn't in violation of good faith because the bargain was in good faith to stand behind the recommendation, which they did. There's no indication the government backtracked from the recommendation. That's the idea. That is exactly correct. So is there any case law, and I take it your position is all of our case law is consistent with that position, and there's no case law suggesting otherwise anywhere? The government is not aware of any case law in this circuit suggesting otherwise. Are you aware of any anywhere else? No, I'm not aware of any of that. And again, I would note that the review here is plain error too. And as I indicated, the case law here shows that it supports the finding that there was no breach in this case. And to the extent my sister counsel makes arguments about the government providing information regarding the co-defendant, again, there was no obligation under the plea agreement to compare Mr. Burgess to that of his co-defendants. And if anything, it may have become an issue for the prosecutor to discuss that because the other co-defendant, as Mr. Burgess's counsel noted, received a higher sentence than Mr. Burgess. So it may have been seen as, in essence, arguing for the higher sentence. Could you just address the practical point Judge Lopez raises? And I just wonder how the government conceives of it just as a matter of fair play. So when you are recommending something that's so at odds with the guidelines range, such a downward range, it must be the government has a reason for doing that that relates to the, in its view, exceptional nature of the cooperation. Is that right or am I misunderstanding? For Burgess's case, as both parties discussed, there was a reason for the 18-month sentence, which was Mr. Burgess's early and full acceptance of responsibility and the fact that he had conserved judicial resources. And the government viewed that as an unusual benefit to it. Is that right? In this case, yes, that was something that both parties discussed. So I guess this is the heart of Judge Lopez's question. At least as I understand it, which is that's the important information to communicate to the judge. So because that's why actually the government is recommending it. It's not just the fact of the recommendation. It's the reason for the recommendation. Yet that's never communicated to the judge by the government. So the real value of the recommendation, which is the government's own knowledge of how much benefit it got from this particular cooperation, isn't really something the judge can factor in. And it's not very easy for the defendant to say, let me tell you how much this helped the government. When the government's right there not saying it, what would be helpful for the judge to know is the government saying, yes, this really was unusual cooperation because it was so early, maybe because it was in the midst of COVID and we had docket pressures and the like, and we really want the judge to know that. Because we get a benefit from this. We don't want you to upset the apple cart. So all of that is not said, and instead the prosecution just says, yes, this is our recommendation. So just as a practical matter, doesn't that seem to undermine what you would think we were after in trying to honor the bargain? If not, why not? This was something that was also included in the P agreement. So it was before the court, regardless of whether the government had stated that. What was in it? The exact reasons for the 18-month recommendation. The P agreement actually had laid out that the parties had agreed to recommend the 18-month sentence because Mr. Burgess had accepted responsibility early on and had conserved judicial resources. Counsel, doesn't the government have an interest in having courts accept plea agreements? If the government is going to induce individuals to enter into plea agreements, those plea agreements definitely serve the government's interest. But if it becomes evident that judges are not going to accept those agreements, that doesn't serve the government's interest in getting defendants to enter into plea agreements, does it? I mean, it begins to seem like, again, a bit of a game where the government will enter into these agreements, understanding the judges are free to reject them and frequently will. That doesn't serve the government's interest, does it, to sort of have it known in the bar that these plea agreements don't mean very much to the judges? I don't believe that that's the case, that the plea agreements don't mean much for the judges. The parties negotiate and agree upon a sentence, and that is then recommended to the district court judges, and the district courts do take that into consideration and ultimately evaluate the sentencing factors and issue a sentence within their discretion. So there is a way to these agreements and the parties entering into these agreements. Thank you. I do see that my time is up, unless the court has any other questions. Thank you. Thank you, counsel. At this time, if counsel for the appellant would reintroduce yourself on the record. Again, you have a two-minute rebuttal. I just wanted to see if you can just take 30 seconds at the end after your two minutes. It occurs to me you haven't addressed the second of your two issues. We've been just talking about the brief, so. Yes, Your Honor. Again, Jessica Earle for Mr. Burgos. I'm going to address three quick points that the government mentioned. Very briefly, I'd like to point out the Brown and Lesser very recent cases before this court are range cases, again, and the issue isn't so much what wasn't said as I opened up with my argument, but what was said. There was language that the defense was arguing there, apart from the guidelines issues, that they considered sort of breach language, and the circuit held that it wasn't, particularly in light of the government can make a little stiffer recommendation when we're arguing ranges. My second point is whenever a district court needs to go outside of the guideline range, this court has reminded us over and over that the further we are away from the guidelines, the heavier the burden is on the district court to justify that sentence. And what happened here is the government in no way put this district court in a position to understand what took Mr. Burgos out of the mind run of immigration reentry offenses. This goes to the practicality of Judge Lippis' question. If the government is signing these pleas saying, yes, of course, what defendant is not going to be interested in a downward variance plea agreement, a joint recommendation, to a lower sentence. But then to get to the sentencing hearing, and as this court has said, the overall conduct of the prosecutor must be consistent with the recommendation. In these joint recommendations for downward variance cases, it's hard to see how merely repeating the reasons that we signed the plea agreement and that we say 18 months is enough, puts the district court in a position to think, you know, why should I uphold this plea to why shouldn't I uphold this plea. Just answer what the government's response to that is that the plea recommendation itself, the agreement, contains the reasons which, if relied on, would have been enough to support the variance, which was the early nature of the cooperation. So the plea agreement mirrors very closely what the prosecutor read from the plea agreement at the sentencing hearing. However, it's clear that that didn't make an impression on the district court judge. But that can't be the test. The district court, no, that can't be the test. But the district court mentions the word plea agreement once at the very beginning when she opens the court to Mr. Borges' sentence. It's never repeated. Even in her pronouncement of sentence, she never mentions the plea agreement. So, again, going back to what I argued before, the court asked about the practicality. This is important to note how different this case is because of the downward variance. We could have things like, here's what happened to Mr. Guzman, Your Honor. I didn't have to convene grand jury in the middle of Delta variant because of Mr. Borges' early acceptance. I didn't have to deal with witnesses coming in for us. Not even defense counsel made those points. No, Your Honor, defense counsel. You have just over time, so you have a third point, and then I just want you to have 30 seconds to discuss the other issue. No, I reached the second and third sort of meshed together, the mine run. Okay. Do you want to just take 30 seconds on the second issue? The substantive reasonableness, our argument focuses primarily on the fact that the judge did not mention once why the plea agreement wasn't enough. But I think it's important to note that that argument really ties into the breach. They flow into one another, Your Honor. So while a district court can consider anything, and this court has reminded us that we don't have to favor one factor over the other, that's up for the sentencing judge, it's pretty glaring here that the plea agreement, which was such a big benefit to Mr. Portogoz at the moment of signing, made no impression on the district court judge because of the lack of any sort of viable recommendation by the government. Thank you. Just one very quick question, please. Does the plea agreement provide the rationale for the government to enter into it? In other words, when a judge reads a plea agreement, will the judge understand that there was this exceptional degree of cooperation on the part of the defendant that in the prosecution's mind justified that? Will that be apparent from a reading of the agreement? The plea agreement in this case, in Appendix 20, does mention the judicial resources that are saved, and that is an outlier for pleas in this district. Usually they don't include that language. The problem is that that two sentences by itself, when the court only mentioned the word plea agreement once, is not quite enough for the downward bearings. Thank you. Thank you. Thank you, counsel. That concludes our argument in this case. Counsel is excused.